# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISON

| | |
|---|---|
| THE CINCINNATI INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | ) Case No. 09-04259-CV-S-DGK |
| v. | )<br>)<br>) |
| TRANSPORT GRAPHICS, INC., et al., | )<br>) |
| Defendants. | ) |

## ORDER

Pending before the Court is the Plaintiff's fully-briefed Motion for summary judgment. Docs. 17-19, 24, 28. For the reasons discussed below, the Plaintiff's Motion is GRANTED.

## Background

On May 21, 2009, Defendant Arning Canopy Systems, Inc. ("Arning") filed suit against Defendant Transport Graphics, Inc. ("Transport") and others in the Circuit Court of Barry County, Missouri. Arning alleges breach of contract due to the provision of allegedly faulty vinyl graphics panels by Transport to Arning's client, a Casey's General Store location. Arning alleges that the red "grid pattern graphics and building and canopy panels" have faded to pink.[1] The original petition alleged breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, breach of express warranty and breach of contract. Doc. 18-1. Arning asserts that it later amended its petition to include claims of negligent misrepresentation against Transport. Doc. 25 at 9.[2]

---

[1] Given Casey's "valued commercial insignia" including red panels on the exterior of its locations, this fading renders the panels useless, Arning contends.

[2] Specifically, Arning claims that Transport asserted that the panels were made of materials warranted against fading. The Plaintiff argues that the amended petition has not yet actually been filed, that it is invalid because Transport has not retendered the claim in order for the Plaintiff to re-evaluate its coverage, and irrelevant because

The Plaintiff is Transport's insurer on Commercial General Liability ("CGL") and Umbrella policies. The Plaintiff filed this declaratory judgment action seeking a judicial determination that it has no duty to defend or indemnify Transport in the underlying lawsuit on the theory that its policies do not cover—and specifically exclude—contractual liability.

**Standard**

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the materials facts" but rather must "cit[e] to particular parts of materials in the record…" showing a genuine dispute for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), Fed. R. Civ. P. 56(c)(1)(A). Any properly alleged fact not "specifically controverted" is deemed admitted for the purposes of summary judgment. Local Rule 56.1(a).

**Discussion**

**A. Statement of Uncontroverted Material Facts**

1. On or about May 21, 2009, Arning filed a lawsuit against Transport and others. The lawsuit is currently pending in the Circuit Court of Barry County, Missouri, Cause No.: 09BR-CC00040.

---

nothing in the amended petition triggers coverage. Regarding the first point, the Plaintiff directs the Court to Missouri Case.net. Though Case.net does not provide official court records, the Plaintiff is correct that while it shows a docket entry for a motion for leave to file an amended to petition and answers to the amended petition, there is no docket entry showing the filing of the amended petition. Arning has not submitted a file-stamped copy of the amended petition. However, since the alleged amended petition has been filed with this Court, the most efficient way to resolve this issue would be to evaluate whether—*if* properly filed—the negligent misrepresentation claim would change the Court's determination about the parties' rights and responsibilities.

2. The Plaintiff provided a policy of insurance for Transport that included CGL and Commercial Umbrella Liability coverage. This policy was in effect from December 10, 2007 to December 10, 2010.[3]

3. The policy contains the following relevant provisions:[4]

   **COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

   \*\*\*

   **SECTION I – COVERAGES**

   **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

   **1. Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   \*\*\*

   b. This insurance applies to "bodily injury" and "property damage" only if:

   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory":
   (2) The "bodily injury" or "property damage" occurs during the policy period; and
   (3) Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, you did not know, per Paragraph 1.d. below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in party.

---

[3] Transport admits this fact. Arning denies it for "lack of knowledge and information." This is not the proper way to "specifically controvert" a fact. A party must make reference to something in the record which provides a basis for a denial, rather than simply denying another party's properly supported summary judgment facts. Furthermore, Arning asserts that the policy does not have a sponsoring sworn declaration that it is accurate and complete and therefore is not properly before the Court. Rule 56 clearly does not require that all exhibits be supported by an affidavit. It is telling that the party with whom this contract was executed—Transport—admits the existence and content of the policies.

[4] Arning denies the content of the policies for "lack of knowledge and information." As discussed in note 3, this is an insufficient denial.

\*\*\*

**2. Exclusions**

This insurance does not apply to:

\*\*\*

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

\*\*\*

    (1) That the insured would have in the absence of the contract or agreement; or

    (2) Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement…

\*\*\*

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

    (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
    (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

**n. Recall of Products, Work or Impaired Property**

Any liability or damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";
(2) "Your work";
(3) "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known defect, deficiency, inadequacy or dangerous condition in it.

\* \* \*

## COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

\* \* \*

### SECTION I – COVERAGES

**A. Insuring Agreement**

1. We will pay on behalf of the insured the "ultimate net loss" which the insured is legally liable to pay as damages for "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies:

   a. Which is in excess of the "underlying insurance" or
   b. Which is either excluded or not insured by the "underlying insurance"

2. This insurance applies to "bodily injury", "personal and advertising injury" or "property damage" only if:

   a. The "bodily injury", "personal and advertising injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
   b. The "bodily injury" or "property damage" occurs during the policy period shown in the Declarations; or
   c. \* \* \*
   d. Prior to the "coverage term" in which the "bodily injury" or "property damage" occurs, or a "personal and advertising injury" offense is committed, you did not known, per Paragraph **5.** below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part, or that the "personal and advertising injury" offense had been committed or had begun to be committed, in whole or in part.

5

\* \* \*

**B. Exclusions**

This policy does not apply to:

\* \* \*

    3. **Contractual Liability**

    Any liability for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement ….

    4. **Damage to Impaired Property or Property Not Physically Injured**

    "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

        a. A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
        b. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

    This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

\* \* \*

    **6. Damage to Your Product**

    "Property damage" to "your product" arising out of it or any part of it.

    **7. Damage to Your Work**

    "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

    This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

\* \* \*

    **18. Recall of Products, Work or Impaired Property**

> Any liability or damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
>
>> a. "Your product";
>> b. "Your work"; or
>> c. "Impaired property";
>
> if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

\* \* \* \*

4. The Plaintiff's position is that its policies afford Transport no coverage in the underlying suit. However, the Plaintiff is currently defending Transport subject to a reservation of rights.

### B. Missouri Law is Clear that the Plaintiff Has No Duty to Defend or Indemnify Breach of Contract Claims

The policies at issue define an "occurrence" as "an accident, including continuous or repeated exposure to the same general harmful conditions." Doc. 18-2 at 35. Missouri law defines an accident as "[a]n event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event." *American States Ins. Co. v. Mathis,* 974 S.W.2d 647, 650 (Mo. Ct. App. 1998) (citations omitted). *Mathis* stands for the proposition that breach of contract is not a covered occurred under a CGL policy. *See also Columbia Mut. Ins. Co. v. Epstein,* 239 S.W.3d 667, 672 (Mo. Ct. App. 2007) (holding that "pure[]...breach of contract [claims]" whether intentional or negligent, are not occurrences or accidents under a standard CGL policy). Absent this controlling precedent, the Court's conclusion would be the same, because both the CGL and umbrella policies explicitly exclude contractual liability from coverage. Other than the claim for negligent misrepresentation found in the amended petition, all of Arning's claims—breach of contract and warranties—are contractual in nature. *See Hess*

7

*v. Appleton Mfg. Co.,* 148 S.W. 179, 180 (Mo. Ct. App. 1912) (noting that "an action for a breach of warranty is founded on contract while an action for false and fraudulent representations…cannot be said to be founded on contract").

The Court is required to interpret an unambiguous insurance policy strictly. *Haggard Hauling & Rigging Co. v. Stonewall Ins. Co.,* 852 S.W.2d 396, 400 (Mo. Ct. App. 1993). This requirement, coupled with clear Missouri law excluding contractual claims from CGL coverage, leads to the conclusion that the Plaintiff has no duty to defend or indemnify Transport on any of the contractual claims in the underlying suit. The Plaintiff's policies are designed to insure its clients against injuries and property damage sustained due to its business operations. There is no policy language that requires these policies to be used as a performance bond or a form of malpractice insurance.

### C. Claims of Negligent Misrepresentation Are Excluded From Coverage

Despite the Plaintiff's protestations otherwise, there is some lack of clarity in Missouri law about whether or not a negligent misrepresentation claim can constitute an "occurrence" under a CGL policy. *See Mathis,* 974 S.W.2d at 648 (finding that dismissal is appropriate because the negligent misrepresentation claim was "based on the same acts" as the contract claims); *but see Wood v. Safeco Ins. Co. of America,* 980 S.W.2d 43, 52 (Mo. Ct. App. 1998) (holding that "a negligent misrepresentation claim is covered by a liability insurance policy providing coverage for an 'occurrence' defined as an 'accident.'"). Given this lack of clarity and the fact that there does not appear to be a clear statement from the Missouri Supreme Court on this issue, the Court will not decide this case on this issue of whether negligent misrepresentation can be an occurrence under a CGL policy. However, the Court finds that both the CGL and umbrella policies have excluded all underlying claims from coverage, even if the negligent

misrepresentation claim can constitute an occurrence. Both policies contain identical exclusions titled "Recall of Products, Work or Impaired Property." Doc. 18-2 at 22, 67. These exclusions exclude coverage for

> "Any liability or damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
>
> (1) 'Your product';
> (2) 'Your work';
> (3) 'Impaired property';
>
> if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known defect, deficiency, inadequacy or dangerous condition in it."

*Id.* The definitions for both "your work" and "your product" specifically include "warranties and *representations* made at any time with respect to the fitness, quality, durability, performance or use of [your work or your product]." *Id.* at 36-37, 78 (emphasis added). Arning now[5] claims that Transport's representations regarding the durability of its panels damaged Arning and Casey's. This type of claim has been explicitly excluded from coverage in the policy language stated above. Such exclusions make sense in view of the *Mathis* court's recognition of the fact that CGL policies are not intended

> [T]o guarantee the technical competence and integrity of business management. The CGL policy does not serve as a performance bond, nor does it serve as a warranty of goods or services. It does not ordinarily contemplate coverage for losses which are a normal, frequent or predictable consequence of the business operations. Nor does it contemplate ordinary business expense, or injury and damage to others which results by intent or indifference.

*Mathis,* 974 S.W.2d at 649 (citations omitted).

---

[5] It is, at the very least, noteworthy that Arning did not request leave to file an amended petition until after the Plaintiff had moved for summary judgment in this case. There does not appear to be any suggestion that Arning only recently realized or discovered that Transport had made these statements or that it had relied on such statements.

**Conclusion**

Regarding the pure contract claims, Missouri law is clear that they cannot constitute an occurrence/accident given the relevant policy language at issue in this case. While some cases—such as *Mathis*—hold that a plaintiff cannot simply repurpose his contract claims as negligent misrepresentation, others hold that the negligent nature of a statement can fit within the definition of occurrence/accident. That would seem to be the case here, as Arning now alleges that Transport failed to use reasonable care in determining what materials the manufacturer would use in producing the panels. Regardless, the policy exclusions related to the insured's products and work exclude coverage for damages based on misrepresentations. Because the unambiguous language of the policies establishes that there is no coverage, the Court GRANTS the Plaintiff's Motion for summary judgment. The Plaintiff is neither obligated to defend nor indemnify Transport in the underlying lawsuit.

**IT IS SO ORDERED**

Dated: May 19, 2011     /s/ Greg Kays  
GREG KAYS,  
UNITED STATES DISTRICT JUDGE